ROBERT L. ETCHISON,

     Plaintiff,

v.                              Civil Action No. 5:05CV99
                                             (STAMP)

WESTFIELD INSURANCE COMPANY,
a corporation,

     Defendant,

and

WESTFIELD INSURANCE COMPANY,
a corporation,

     Plaintiff,

v.                              Civil Action No. 5:05CV132
                                           (STAMP)

STEELE CONSTRUCTION, LTD.,

     Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING WESTFIELD INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT AGAINST STEELE CONSTRUCTION, LTD.,
DENYING STEELE CONSTRUCTION, LTD.'S
MOTION FOR SUMMARY JUDGMENT AGAINST WESTFIELD AND
GRANTING WESTFIELD INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AGAINST ETCHISON**

## I.  Procedural History

On March 3, 2005, Steele Construction, Ltd. ("Steele") filed

a complaint against Robert L. Etchison ("Etchison") in the Circuit

Court of Ohio County, West Virginia.  Steele requested enforcement

of a mechanics' lien for damages in the amount of $4,938.10.

Etchison filed a counterclaim alleging breach of contract, fraud,

deceit, misrepresentation and slander of title.[1]  Subsequently, Steele requested that Westfield Insurance Company ("Westfield") defend or indemnify Steel with respect to the counterclaim filed in the underlying action in state court.  Westfield declined to defend or indemnify Steele and on August 19, 2005, Westfield filed a complaint against the defendant, Steele, in the United States District Court for the Northern District of West Virginia seeking declaratory judgment that Westfield is not required to defend or indemnify Steele.  This action was assigned Civil Action No. 5:05CV132.

On July 7, 2005, Etchison, filed a complaint against the defendant, Westfield, in the Circuit Court of Ohio County, West Virginia.  Etchison seeks damages from Westfield based on a third-party bad faith claim and declaratory judgment stating that Westfield must indemnify Steele.  On July 22, 2005, Westfield removed this civil action to the United States District Court for the Northern District of West Virginia pursuant to 28 U.S.C. §§ 1332 and 1441.  This action was assigned Civil Action No. 5:05CV99.  Etchison then filed a motion to remand for lack of diversity jurisdiction, which this Court denied on October 24, 2005.

---

[1]The counterclaim by Etchison was filed in Civil Action No. 05-C-104-W in the Circuit Court of Ohio County, West Virginia.

Westfield filed a motion to consolidate the above-styled civil actions of <u>Etchison v. Westfield Insurance Company</u>, Civil Action No. 5:05CV99, and <u>Westfield Insurance Company v. Steele Construction Company</u>, Civil Action No. 5:05CV132. Neither Etchison nor Steel responded to Westfield's motion to consolidate. Thus, on March 17, 2006, this Court granted Westfield's motion and the two cases were consolidated.

On January, 31, 2006 Steele stipulated that Count II of the plaintiff's complaint was settled, thereby waiving any claim against Westfield for indemnification in or defense of Count II in Civil Action No. 5:05CV132.

On April 6, 2006, Steele filed a motion to dismiss or remand. On March 16, 2006, Etchison filed a motion to abstain and suggestion of lack of subject matter jurisdiction. On September 26, 2006, this Court entered an order denying Steel's motion to dismiss or, in the alternative, remand and denying Etchison's motion to abstain and suggestion of lack of subject matter jurisdiction.

On January 31, 2006, Westfield filed a motion for summary judgment against Steele in Civil Action 5:05CV132. On February 2, 2006, Westfield filed a motion for summary judgment against Etchison in Civil Action No. 5:05CV99, to which Etchison responded and Westfield replied. On February 10, 2006, Steele filed a motion for summary judgment against Westfield in Civil Action No.

5:05CV132, to which Westfield filed a combined reply to Steele's response to its motion for summary judgment and response to Steele's motion for summary judgment.

After considering the parties' memoranda and the applicable law, this Court finds that Westfield's motion for summary judgment against Steele must be granted, Steele's motion for summary judgment against Westfield must be denied and Westfield's motion for summary judgment against Etchison must be granted.

## II.  Facts

This civil action arises out of an underlying state court action, by which Steele, Westfield's insured, seeks to recover the balance of a contract payment from Etchison.

On or about October 5, 2004, Steele contracted with Etchison to install a paved driveway on Etchison's property for $8,725.00, as well as two drainage pipes at an hourly rate for labor and materials.  Steele charged $9,928.10 for the work it completed on Etchison's property.  Etchison alleges that, a short time after Steele completed the construction, he identified substantial defects in the workmanship and/or materials provided by Steele. Specifically, Etchison asserts that bulges and depressions formed throughout most of the surface of the driveway installed by Steele.

Because of a dispute between the parties, Etchison only made a partial payment to Steele in the amount of $5,000.00.  When Steele was not paid the full balance of the proceeds under the

contract, Steele filed a notice of mechanics' lien and then filed an underlying action in state court to recover the balance of the contract price.

After the complaint was filed, Etchison filed a counterclaim in the underlying state action asserting claims against Steele for breach of contract, fraud, deceit, misrepresentation and slander of title.

In Civil Action No. 5:05CV132, Westfield seeks a declaration that the insurance policy issued by Westfield does not cover Etchison's claims and that Westfield has no duty to defend or indemnify Steele in the underlying state court action. In Civil Action No. 5:05CV99, Etchison seeks damages for violations of the West Virginia Unfair Trade Practices Act and a declaration as to his rights under the applicable insurance policy pursuant to West Virginia Code § 55-13-1 and 2. In addition, Etchison requests attorney's fees and costs.

### III. Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256.  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV. <u>Discussion</u>

Westfield insures Steele under a "Commercial Insurance Coverage," Policy No. CWP 5 031 034. (Westfield Mot. for Summ. J. Against Steele Ex. C.) The terms applicable to Civil Action No. 5:05CV99 and Civil Action No. 5:05CV132 are identical. The policy states, in pertinent part:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

7

(1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.   This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage " had occurred in whole or in part.  If such listed insured or authorized "employee" knew prior to the policy period that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuance, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

>    (1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

>    (2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

>    (3)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

## 2.    Exclusions

This insurance does not apply to:

### a.    Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b.    Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of

liability assumed in a "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>
> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

**j.   Damage To Property**

"Property damage" to:

(1)  Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2)  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)  Property loaned to you;

(4)  Personal property in the care, custody or control of the insured;

(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically Insured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use or other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)   "Your product,:

(2)   "Your work;" or

(3)   "Impaired property;"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

. . .

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may at our discretion investigate any offense and settle any claim or "suit" that may result.  But:

(1)  The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2)  Our right and duty to defend end when we gave used up the applicable limit of insurance in the payment of judgment or settlements under Coverages A or B or medical expenses under Coverage C.

. . .

**2.  Exclusions**

This insurance does not apply to:

**a.    Knowing Violation Or Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.    Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.    Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

.  .  .

**f.    Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.    Quality Or Performance Of Goods - Failure to Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

.  .  .

**SECTION V - DEFINITIONS**

.  .  .

3.    "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

.  .  .

8.    "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a.    it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.    You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by;

    a.    The repair, replacement, adjustment or removal of "your product" or "your work," or

    b.    Your fulfilling the terms of the contract or agreement.

.  .  .

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

.  .  .

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

.  .  .

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that

property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored a or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

. . .

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (a) You;

   (b) Other trading under your name; or

   (c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.   Includes:

> (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

> (2)   The providing of or failure to provide warnings or instructions.

c.   Does not include vending machines or other property rented to or located for the use of others but not sold.

22.  "Your work";

a.   Means:

> (1)  Work or operations performed by you or on your behalf; and

> (2)  Materials, parts or equipment furnished in connection with such work or operations.

b.   Includes:

> (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

> (2)  The providing of or failure to provide warnings or instructions.

(<u>Id</u>.)

A.   <u>Westfield's Motion for Summary Judgment Against Steele and Steele's Motion for Summary Judgment Against Westfield, Civil Action No. 5:05CV132</u>

In its motion for summary judgment, in Civil Action No. 5:05CV132, Westfield argues that there are no genuine issues of material fact with respect to: (1) the lack of coverage under Westfield's policy issued to Steele for Etchison's counterclaim

16

against Steele in the underlying state court action; and (2) Etchison's claims under the policy at issue and under the Unfair Trade Practices Act, West Virginia Code § 33-11-4(9).

In its motion for summary judgment, in Civil Action No. 5:05CV132, Steele argues that Etchison's counterclaim should be covered under Steele's insurance policy issued by Westfield.

This Court notes that on January, 31, 2006, Steele stipulated that Count II of the plaintiff's complaint regarding claims of Guardian Elder Care at Wheeling, LLC, OHI Asset (PA) Trust, and Guardian LTC Management, Inc. were settled, thereby waiving any claim against Westfield for indemnification in or defense of Count II of the complaint in Civil Action No. 5:05CV132.

1.   Declaratory Judgment Action on Etchison's Counterclaim

In Count I of the complaint, Westfield asserts that the policy at issue does not cover Etchison's counterclaim in the underlying state court action.   Thus, in its motion for summary judgment, Westfield asserts that it does not have a duty to defend or indemnify Steele in the state court action.

In its motion for summary judgment, Steele asserts that: (1) the notice of a mechanics' lien is a public record, that is a written publication, as defined in the insurance policy; and (2) Etchison's counterclaim alleges that the filing of the notice of mechanic's lien constitutes slander of title of his real estate, as covered by the policy.   Thus, Steele asserts that Etchison's

17

counterclaim is covered under the policy because it is a written publication that libels a person or disparages his goods. In response, Westfield asserts that Steele did not slander Etchison personally, as covered under the policy for "personal and advertising injury." Instead, Etchison asserts that Steele slandered his real estate title, which is not covered under the policy.

In addition, Steele asserts that Etchison's counterclaim, Counts One through Four, are covered under Section I of the policy's Coverage A "Bodily Injury and Property Damage Liability." (Id.)

In this civil action, the issue is whether the policy at issue requires Westfield to defend or indemnify Steele with respect to Etchison's counterclaim filed in the underlying state court action.

This Court finds that the policy at issue does not cover Etchison's counterclaim against Steele in the underlying state court action. Therefore, Westfield has no duty to defend or indemnify Steele in the underlying state court action.

> a. Slander of Title

Slander of title is a recognized cause of action in West Virginia. TXO Production Corp. v. Alliance Resources Corp., 419 S.E.2d 870, 879 (W. Va. 1992). To prove a claim of slander of title the plaintiff must establish the following elements: "(1) publication of; (2) a false statement; (3) derogatory to

plaintiff's title; (4) with malice; (5) causing special damages; and (6) as a result of diminished value in the eyes of third parties." <u>Id.</u>

When, as in this case, a policy provides coverage for "personal injury" based upon libel, slander and similar offenses, issues arise over what claims fall within the coverage provisions. <u>See</u> Lee R. Russ, Thomas F. Segalla, <u>Couch on Insurance</u>, 3D, ch. 9 § 127:31 (2006). Several courts have held that title to real estate in a slander of title action is not a "good" or "product" within the meaning of "personal injury" providing coverage for publication of material that disparages an organization's goods, products or services. <u>Bank One, Milwaukee, v. Breakers Development, Inc.</u>, 559 N.W.2d 911, 912 (Wis. Ct. App. 1997); <u>United States Fid. and Guar. Co. v. Saddle Ridge, L.L.C.</u>, No. 98-2567-KHV, 1999 U.S. Dist. Lexis 18359 at *15 (D. Kan. Sept. 27, 1999)("Fidelity"); <u>Kickham Group, Inc. v. American Nat'l Fire Ins. Co.</u>, No. 3:96CV1823-D, 1997 U.S. Dist. Lexis 23733 at *9-10 (N.D. Tex. Sept. 24, 1997).

Moreover, it is well established in West Virginia that "where the provisions of an insurance policy contract are clear and unambiguous, they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." <u>Keffer v. Prudential Ins. Co.</u>, 153 W. Va. 813, 815-16

(1970). In this civil action, both Steele and Westfield assert that the provisions of the policy at issue are unambiguous.

In its motion for summary judgment, Steele requests that this Court declare that Westfield must defend or indemnify Steele in the underlying state court action with respect to Etchison's counterclaim for slander of title, Count Five. Count Five of Etchison's counterclaim alleges, in pertinent part, that:

. . .

33. The Plaintiff/Counterclaim Defendant has intentionally caused to be filed a Notice of Mechanic's Lien on the Defendant/Counterclaim's subject real property in Valley Grove, Ohio County, West Virginia, in the Office of the Clerk of the Ohio County Commission, in Wheeling, Ohio County, West Virginia.

. . .

35. Said lien has no underlying basis in fact or law, and has effectively clouded the good and clear title to the subject real property enjoyed by the Defendant/Counterclaimant.

36. As a direct and proximate result, the Defendant/Counterclaimant has by virtue of such public record filing of a fraudulent cloud upon his title suffered damages in the form of diminished value of said real property to be determined by a jury.

(Steele's Mot. for Summ. J. Ex. 1 at 10).

To determine whether coverage exists, this Court must first determine whether slander of title is covered under the policy's definition of "personal injury." See Couch on Insurance at § 127:31 ("[w]hether a specific offense is covered by the policy

20

depends upon the policy's definition of "personal injury," and whether such offense falls within that definition.").

Section V of the policy defines "personal and advertising injury" as an injury arising out of one or more of seven enumerated "offenses." (Westfield's Mot. for Summ. J. Ex. C at 55.) One such offense is "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." <u>Id.</u> This definition refers to two related but separate offenses. The first offense constitutes "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization." <u>Id.</u> The second offense constitutes "[o]ral or written publication of material that . . . disparages a person's or organization's goods, products or services." <u>Id.</u>

For Coverage B of the policy to encompass slander of title, title to real property must fall within the meaning of the terms "person" or "organization" under the first offense, or within the meaning of the term "goods," "products" or "services" under the second offense. To ascertain the ordinary meaning of a term, courts frequently look to the dictionary definition. <u>See e.g.</u> <u>Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.</u>, 832 F.2d 1358, 1369-70 (5th Cir. 1987).

The parties do not argue that title to real property is a "person" or "organization." <u>Id.</u> Based upon common sense, and

similar holdings by other courts, this Court finds that slander of title is not within the scope of the first offense. See Kickham Group, Inc., 1997 U.S. Dist. LEXIS 23733, at *8.

Steele asserts that slander of title is covered by the policy because it is "a written publication of material . . . that slanders or libels a person's goods, being his real estate." (Steele's Mot. for Summ. J. at 5.) To determine if slander of title is within the scope of the second offense, this Court will look to Black's Law Dictionary for the definitions of these terms. Black's Law Dictionary defines "goods" as "[a] term of variable content and meaning. It may include every species of personal property or it may be given a very restricted meaning." Black's Law Dictionary 694 (6th ed. 1990). Under this definition, "goods" means tangible, personal property rather than title to real property. Thus, this Court finds that title to real property is not included within the meaning of the term "goods" as used in Section V of the policy.

Black's Law Dictionary defines "product" as:

With reference to property, term refers to proceeds; yields; income; receipts; return. Goods produced or manufactured, either by natural means, by hand, or with tools, machinery, chemicals, or the like. Something produced by physical labor or intellectual effort or something produced naturally or as a result of natural process as by generation or growth.

Black's Law Dictionary 1209 (6th ed. 1990).

Under this definition, the meaning of the term "product" does not include title to real property. This Court finds that title to real property also does not meet the definition of "product" as used in Section V of the policy.

Finally, <u>Black's Law Dictionary</u> defines "services" as "[t]hings purchased by consumers that do not have physical characteristics (<u>e.g.</u>, services of doctors, lawyers, dentists, repair personnel)." <u>Black's Law Dictionary</u> 1369 (6th ed. 1990). As with "goods" and "products," this Court finds that title to real property does not meet the definition of "services" as used in Section V of the policy. Based upon the definitions above, this Court finds that title to real properly does not come within the definition of this term.

Although no West Virginia court has interpreted a policy provision similar to Section V, to determine whether the policy encompasses a slander of title claim, this Court's ruling today is supported by other opinions from federal district courts and the Wisconsin Court of Appeals, which have all held that slander of title was not one of the offenses that gave rise to "personal injury," as defined in the insured's policy. <u>Bank One, Milwaukee, v. Breakers Dev., Inc.</u>, 559 N.W.2d 911, 912 (Wis. Ct. App. 1997); <u>United States Fid. and Guar. Co. v. Saddle Ridge, L.L.C.</u>, No. 98-2567-KHV, 1999 U.S. Dist. Lexis 18359 at *15 (D. Kan. Sept. 27, 1999)("Fidelity")(unpublished opinion); <u>Kickham Group, Inc. v.</u>

American Nat'l Fire Ins. Co., No. 3:96CV1823-D, 1997 U.S. Dist. Lexis 23733 at *9-10 (N.D. Tex. Sept. 24, 1997)(unpublished opinion). Without considering the unpublished opinions as precedent, this Court finds that the policy at Section V does not provide coverage for a slander of title claim.

Accordingly, this Court finds that the policy at issue does not cover Etchison's counterclaim for slander of title.

b. Property Damage Liability

In its motion for summary judgment, Steele contends that the policy covers Etchison's counterclaim against Steele for property damages. Specifically, Steele asserts that Etchison alleges, in his counterclaim in the underlying state court action, that Steele damaged his property. In support of his contention, Steele cites to Count One through Count Four of Etchison's counterclaim, which states as follows:

> COUNT ONE - BREACH OF CONTRACT . . . Robert L. Etchison has suffered the loss of a $5,000.00 payment on the contract, destruction of his property . . .COUNT TWO - FRAUD . . . [t]he fraudulent statement . . . was material and false, being that the resulting finished product completed in accordance with the fraudulent condition was a worthless driveway that has diminished the value and is destroying the subject real property . . . COUNT THREE - DECEIT . . . [t]he deceit attributable to [Steele] . . . was material and false, being that the resulting finished product completed in accordance with the deceptive condition was a worthless driveway that has diminished the value and is destroying the subject real property COUNT FOUR - MISREPRESENTATION . . . [t]he misrepresentation attributable to [Steele] . . . was material and false, being that the resulting finished product completed in accordance with the misrepresented

condition was a worthless driveway that has diminished the value and is destroying the subject real property.

Steele further asserts that Etchison's allegations are not specific as to the type of damages alleged to have occurred to his real property, however, Etchison's allegations do refer to damages that allegedly occurred during the performance of Steele's construction on Etchison's property. Steele asserts that the counterclaim asserted by Etchison is covered under the terms of the policy.

In summary, the policy states that "We [Westfield] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (Steele's Mot. for Summ. J. at 7.; Westfield's Mot. for Summ. J. Against Steele Ex. C at 42 § 1 ¶ 1.a.)

Westfield asserts, and this Court finds that the policy excludes property damage for Etchison's counterclaim asserted in the underlying state court action.

As stated above, this insurance policy does not apply to:

**j.    Damage To Property**

"Property damage" to:

(5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Westfield's Mot. for Summ. J. Ex. C.)

This Court finds that the plain language of subsection j(5) of the policy excludes Etchison's economic loss arising from Steele's allegedly faulty installation of the driveway and drainage on Etchison's property. Further, this Court finds that the policy excludes coverage for any alleged property damage while Steele's construction work was ongoing under subsection j(6). The policy states that "your work" is "work or operations performed by you" and includes representations made regarding the "fitness, quality, durability, performance or use" of the work completed by the policyholder. Id. In this civil action, Steele was the policyholder and was the company that allegedly incorrectly advised Etchison of what work should be completed and then performed the allegedly faulty work on Etchison's property.

This Court also finds that Subsection 2.1 of the policy excludes Etchison's claims for property damage after the insured's work is completed and the completed product has been utilized for its intended use. Thus, this policy exclusion bars Etchison's claims for Steele's allegedly defective workmanship.

Further, Westfield asserts that the policy excludes coverage for Etchison's alleged deprivation of use of his property and Etchison's request for monetary damages to repair Steele's allegedly faulty workmanship on Etchison's driveway.

Under exclusion 2.n, the policy excludes "[d]amages claimed for any loss, cost or expense incurred . . . for the loss of use,

withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of . . . (2) 'Your work;' or (3) 'Impaired property.'" (Westfield's Mot. for Summ. J. Ex C. at 46.) Based upon the plain language of the policy, this Court finds that the policy excludes Etchison's claims for deprivation of use of his property and damages to repair his property based upon Steele's allegedly faulty workmanship.

Therefore, this Court finds that the policy excludes coverage for Counts One through Four of Etchison's counterclaim alleging property damage and the loss of use of his property.

Accordingly, Westfield does not have a duty to indemnify or defend Steele in the underlying state court action against Etchison.

B.  <u>Westfield's Motion for Summary Judgment Against Etchison, Civil Action No. 5:05CV99</u>

In its motion for summary judgment in Civil Action No. 5:05CV99, Westfield asserts that there are genuine issues of material fact as to the lack of coverage under Steele's policy issued by Westfield.  Specifically, Westfield asserts that: (1) the policy could not cover Etchison's counterclaim filed in the underlying state court action because the policy's coverages are clear; (2) Etchison fails to state a claim upon which Steele's policy issued by Westfield could apply; and (3) the policy excludes coverage for liability arising from a contract.  In response,

Etchison argues that the policy between Westfield and Steele provides coverage for the counterclaim asserted by Etchison against Steele in the underlying state court action. Specifically, Etchison asserts that the policy provides coverage for property damage and "personal and advertising injury." Further, Etchison notes that essential discovery remains outstanding. Thus, Etchison requests that this Court deny Westfield's motion for summary judgment and instead grant summary judgment in favor of Etchison.

This Court finds that Etchison has not provided sufficient evidence to require this Court to deny Westfield's motion under Federal Rule of Civil Procedure 56(f). Federal Rule of Civil Procedure 56(f) states:

> **(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment and may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

Etchison did not file an affidavit pursuant to Federal Rule of Civil Procedure 56(e) or (f). Thus, this Court finds that it must analyze Etchison's arguments regarding Westfield's motion for summary judgment.

Etchison argues that Westfield must defend or indemnify Steele under the policy provisions. This Court finds that Etchison does not raise any further issues not discussed in Section A.

Therefore, as stated above, this Court finds that the policy at issue does not cover Etchison's counterclaim against Steele in the underlying state court action. Accordingly, Westfield's motion for summary judgment against Etchison must be granted.

## V. Conclusion

For the reasons stated above, Westfield Insurance Company's motion for summary judgment against Steele Construction, Ltd. is hereby GRANTED and Steele Construction, Ltd.'s motion for summary judgment against Westfield Insurance Company is hereby DENIED. Further, Westfield Insurance Company's motion for summary judgment against Etchison is hereby GRANTED. Accordingly, this civil action is DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:      September 29, 2006


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE